last case of, I guess it's still this morning, number 12-2715 United States v. Lowe, Mr. Epstein and Mr. Zosmer. Is it Epstein or Epstein? Epstein. Good morning. May it please this court, my name is Robert Epstein. I'm here today on behalf of the appellant, Mr. Sean Lowe. With the court's permission, I'd like to reserve five minutes of my time for rebuttal. Fine. Thank you, Your Honor. The issue on this appeal is whether the police had reasonable suspicion at the moment that they seized Mr. Lowe. I just have a plain-blank, common-sense question. What would need to have happened here not to have seized Mr. Lowe? Well, what would need it is that the officers could have approached him and sought to engage him in a consensual encounter. That the officers could have done. They did not, and there is no dispute. The government concedes that the officers made a show of authority the moment they got out of their car and they, four officers approaching four o'clock in the morning, demanding that Mr. Lowe stop and that he raises his hands. The government doesn't dispute. That's a show of authority. He was then seized at that very moment because he submitted by staying put and not attempting to run away. Well, wait, there's a dispute here. You do acknowledge that the police had the authority upon approaching him to say, show me your hands or put your hands up? Respectfully, I don't, because they did not have reasonable suspicion. That's something else that's not in dispute. The government concedes that when the officers got out of their car, made that show of authority, demanded that he raise his hand, they did not have reasonable suspicion. They were relying on an anonymous tip of a man with a gun, and the Supreme Court had made clear 13 years before that in Florida v. J.L. that that does not provide reasonable suspicion for a stop, so the government concedes that point. Can you say that on a Terry stop, when they're approaching a man, he's got his hands in his pocket, that the police can't say, show us your hands? They can if they have reasonable suspicion that the man is engaged in criminal activity. There's no dispute. They didn't have reasonable suspicion here. So they cannot make, the demand is unconstitutional, and the Supreme Court's made clear that a man faced with an unconstitutional demand like that can ignore the police and go about his business. Okay, so your basic position is that the officers were violating the Fourth Amendment when they told him to show his hands under this situation? Yes, Your Honor. Yes. And he was seized at that very moment because there's no dispute. He did not attempt to run away. He stayed put. There's a conflict in the officer's testimony as to how quickly he raised his hands. Officer Campbell testified four separate times that Mr. Lowe, in fact, did raise his hands, and he never testified to any delay on Mr. Lowe's part. So your argument is that what they should have done at roughly 4 o'clock in the morning, when they have this anonymous tip that there's an African-American with a hood that had possibly been involved in a murder a short time before, that what they should have done was, what, go up and say, excuse me, can we ask you some questions? Is that it? Let me just back up a second because Your Honor has some of the facts respectfully known. No, no, no, problem. There was no suggestion that it was a murder before, and there was absolutely no suggestion. There was a report of a gunshot an hour and a half earlier in the neighborhood. That was it? But that was it. There was no evidence that the tipster was aware of that gunshot. No, no, no. But the police do have a right to piece those two things together, right? For whatever that's worth, it might not be worth much. Yes, they could, but here even the district court judge testified. I mean, the district court judge acknowledged that would be a quantum leap, and if you look at appendix site page 203, the judge referred to that as a quantum leap. It was undisputed. How could the district court have denied your motion to suppress? Well, the district court judge denied it based on his determination that the officers had reasonable suspicion from what he termed a refusal on Mr. Lowe's part to raise his hand. Now, nobody testified that Mr. Lowe refused to raise his hand. Officer McGinnis testified that there was a delay. Officer Campbell didn't testify that there was no delay at all. But the judge was wrong for two reasons. Even if what he meant to refer to was McGinnis' testimony that there was a delay in raising his hand, there's two problems with the judge's conclusion there. The first is that Mr. Lowe was already seized before any alleged delay in raising his hands because he submitted by staying put. The judge didn't determine the moment of seizure. Well, did he stay put or back up? Didn't somebody testify that he backed up? Well, McGinnis, the officer who testified to the delay in raising his hands, did not testify that he backed up. He testified to the contrary. Campbell said he backed up. Campbell said that he kind of started to back up, but that there was a fence right behind him. At that point, he stays put. There's a fence right behind him. Campbell didn't say how many steps exactly it took, but he testified that there was a fence because the house next door, these are row houses, the houses are right next to each other. The house next door was undergoing construction, so there's a fence right there. So if he backed up, it would appear that he backed up a foot or two, and then he stops, he stays put, he's seized. He is submitted to the officer's show of authority. He is not trying to run away. And Campbell says he raises his hands, and then they order him to go put his hands on the wall, and he goes over and he puts his hands on the wall. We have several witnesses here, and wouldn't you admit, Mr. Epstein, this is a very fact-bound inquiry? This Fourth Amendment stuff is always very fact-dependent, is it not? Yes. And we've got varying, sometimes conflicting testimony from the officers, correct? Absolutely. And we have a trial judge who heard the evidence, had a full-blown hearing, and then indicated that findings would be made, and findings were never made. Correct. The government indicates in footnote 7 of its brief that perhaps remand is appropriate. Why shouldn't we just summarily remand this case? Because it would be speculative at best for us to try to reverse-engineer what findings of fact the district court made consonant with its denial of your motion to suppress. I don't think the remand is necessary here, because if you look at any of the versions provided by any of the four witnesses, the officers did not have reasonable suspicion. Under any of their versions, he's submitted to the show of authority, and the officers did not have reasonable suspicion to seize him. According to them, he didn't raise his hands immediately when they told him to show his hands. Now, when he didn't comply with the officers' command, wasn't that some suspicion giving them the right to then, for their safety, do a frisk, make sure he wasn't armed? No, Your Honor, for two reasons. First of all, before any alleged delay in raising his hands, he's already been seized. Once they get out of the car and make that show of authority, and he doesn't try to run away, he is seized. Well, suppose we disagree with you that the mere presence of the officers, even in number, is not a seizure. They're there because they've told that there's a man with a gun and there's been a gunshot report in the area. Now, just because the officers are there, that doesn't mean that his Fourth Amendment rights have been violated immediately, does it? It's not just because they're there, it's because they get out of the car, the government doesn't dispute, they make a show of authority. They don't just go up to him and ask him, hey, can we talk to you for a minute? They demand, at gunpoint, McGinnis testifies he takes out his gun, and they demand that he raises his hand, and then he get up against the wall. That's a show of authority. Did they all testify that the gun was drawn before he was spoken to? No, no, I don't want to misspeak. McGinnis testified that he took out his gun as soon as Mr. Lowe didn't immediately raise his hands. What did the others say about the gun? Officer Campbell testified that he wasn't sure when, if and when, McGinnis drew his gun. Well, wouldn't it be proper for an officer to take out his firearm when they tell him to show his hands and he keeps it in his pocket? No, Your Honor, because they don't have reasonable suspicion to support that demand in the first place. And the Supreme Court has made clear over and over again, if the officers don't have reasonable suspicion, the individual is free to ignore them and go about his business. This court said the same thing in Johnson v. Campbell. The officer goes up to Mr. Johnson in a car and is demanding that he roll down his window. Mr. Johnson refuses, and this court says, no reasonable suspicion. He's within his rights not to roll down the window. But the officers here had a reasonable suspicion. They were told a man with a gun was in the area. It was reported this is 4 o'clock in the morning, incidentally. This is not high noon. It's a high crime area. It's a high crime area, and there is a report of a shooting or a gunshot report in the area. They approach him, and the first thing they say is, show us your hands, right? Yes. Why is it unreasonable for them to say, show us your hands, and if he doesn't, then proceed to take out their firearms and do a security check, a frisking of him to make sure he wasn't armed? It's unreasonable, Your Honor, because they don't have reasonable suspicion, and the government concedes that they didn't have reasonable suspicion. An anonymous tip of a man with a gun, the Supreme Court said in Florida v. Jail, that doesn't even come close to providing reasonable suspicion. I think we all agree, actually, that an anonymous tip is not reasonable suspicion, but the fact that it's a high crime area, it's 4 o'clock in the morning, there's a report of a man with a gun. And this person matches the description. He matches the description. There's a gunshot report in the area. They approach the man and say, show us, raise your hand or show us your hands, and if at that point he doesn't, don't they have reasonable, at least terry-stop authority, to frisk him to make sure he's got his hand in his pocket, he could have a gun in his pocket? They don't for two reasons. By the time they get to him, by the time they ask him to remove his hand from his pocket, he's already been seized because he has submitted by not trying to run away. The Supreme Court made that clear in Brennan, this court's decision in Johnson v. Campbell makes that clear in the 6th Circuit in Johnson, the 2nd Circuit in Simmons. By the act of staying put, he submits he's been seized. But he's standing on the street talking to his girlfriend. Police walk toward him. By standing there, he's been seized? Yes, Your Honor. So any time, so you and I step out for lunch now, if four police come walking down the street toward us and we're standing there chatting, we're seized by the police? If they make a show of authority and we don't stop... What's the show of authority? Well, in this case, the show of authority is the officers, four officers getting out of their police cars at 4 o'clock in the morning, approaching and demanding that he raise his hands and that he stop. All right, so wait, so the show of authority is show us your hands or raise your hands. The show of authority isn't the police walking toward him. And making those demands. All right, so you're saying the police don't have the right to tell him to take his hands out of the hoodie. Correct. All right, and you're relying on JL, but this is a bit of an extension of JL, right? I mean, JL, there's a guy at a bus stop. It's not a high crime area. It's not 4 in the morning. There wasn't a report of a shot fired. There's just a report, hey, there's a guy at a bus stop with a gun. Am I remembering those facts correctly? That's correct. And that's essentially what we have here. And that's someone at a bus stop who's not, you know, have hands placed in a location where he might have a gun in his hand, right? And they just go up and just go at the guy and Terry Frisk him, right? Correct. So these facts are remarkably different, perhaps. I wouldn't say they're different at all. In Florida v. JL, they don't have reasonable suspicion at the time they approach JL. Here, no dispute. They don't have reasonable suspicion at the time that they approach Mr. Lowe. They don't have the right to ask him to remove his – are you saying the government has conceded that the police don't have the right to ask him to remove his hands from the secreted location? The government has conceded in their brief that they didn't – the police did not have reasonable suspicion at the time they made that demand. If they didn't have reasonable – No, but the question is – wait, wait, wait. The question is reasonable suspicion – perhaps they've conceded they didn't have reasonable suspicion to walk up and just do a Terry Frisk of the man. But that doesn't mean that they've conceded that they didn't have the right to ask him to show his hands. If you don't have – And then see how he responds, right? Because then he shows his hands and says, hi, here are my hands. Then, under your argument, I think you have a very good JL argument that they can't do anything more. When they say, show us your hands, and he keeps them in there, then does that not up the ante? No, for two reasons. They can go up and try to engage him in a consensual encounter. As part of that – without reasonable suspicion, that's conceded. As part of that consensual encounter, they can say, hey, we'd feel more comfortable if you take your hands out of your pocket. They can do that. They didn't do that. And he has the right to ignore them. And he has the right to ignore them. They didn't do that here. Instead of trying to engage him in a consensual encounter – Unless you distinguish these facts from JL. But they didn't – what they did here was to get out of their car and immediately make a show of authority. And there's no dispute about that. And to make that show of authority, they need reasonable suspicion. When he stops and stays put, he has submitted. I mean, that's clear from this court's decision in Johnson v. Campbell. Officer goes up to Mr. Johnson in the car and is demanding that he roll down his window. Well, Johnson, they didn't have the fact pattern that put these officers in this location. Now, why didn't these officers have, at the very least, a Terry stop authority to approach the man and say, look, we'd like to talk to you. And while we're talking to you, will you please take your hands out of your pockets? Why is that a legitimate Terry stop? Because all they have at that point is the anonymous tip and they have the fact that it's a high crime error and the fact that it's 4-1. And he matches the description and there's a gunshot wound report in the area. So let's take each of these one by one. If I may, can I take each one by one? Does that give enough reasonable suspicion for a Terry stop? No, Your Honor. And let's take each of those. High crime error adds nothing here. And this court's decision in the United States v. Roberson makes that clear. In conjunction with other factors. High crime error only is relevant, only is probative, if the police observe something suspicious that relates to it being a high crime error. So in Roberson, Judge Becker writing for this court, there was a hotspot known for drug sales. There was an anonymous tip that the defendant was on the corner of that hotspot making drug sales. But when the police arrived, they saw nothing suspicious in regard to the defendant on that corner. And Judge Becker said the fact that it's a hotspot adds nothing here because the police haven't seen anything suspicious. And Judge Becker found, and this court found, that high crime error plus anonymous tip in those circumstances doesn't even come close to reasonable suspicion. Here, what do the police observe? They see a young couple engaged in conversation on the steps of the woman's home. They see absolutely nothing suspicious at all in their behavior. This is a case like Roberson. It's not a case like Connolly or some of the other cases the government cites where the police, in Connolly, it's an area known for purse snatching. Well, imagine the description of the suspect that they were told. That was the exact same in Roberson, and it was the exact same in Florida v. J.L. That doesn't provide any reliability to the tip of criminal wrongdoing. It just means that somebody could have seen that person out there and is trying to harass them. That's why the Supreme Court in Florida v. J.L. said anonymous tip, even if it's right in terms of the clothing, doesn't come close to reasonable suspicion. Thank you. We'll hear from Mr. Zosmer and get you back on rebuttal. Thank you. Good morning, Your Honor. May I please support Robert Zosmer on behalf of the government? The most important thing I think that Mr. Epstein said, and gets to the core of this, is he said the police need reasonable suspicion just to ask this man to show his hands. And that is incorrect. There is no court decision that we know of that has ever said that. And, in fact, we think it would actually be shocking if a federal court said that a police officer walking up to somebody, I don't care whether a high crime area or not, cannot ask a person to show his hands. Well, it can't be true. I mean, again, you and I, now, Mr. Epstein doesn't want to go to lunch with me, so. I'm happy to, Your Honor. I'd go with you. We're standing out there on Market Street with our hands in our pockets and two or four police come up and say, hey, show me your hands. We don't have the right to say, it's a free country, no thanks. Absolutely. Which we do. Absolutely you do. And here's where, and this is where the analysis starts. He said no thanks here, didn't he, for a while? He froze. He did. And then he was at least slow, according to some of the testimony, which was all consistent. Well, I would say he wasn't just slow, and I can come back to that. I mean, one officer pulled his gun because he was repeatedly refusing commands. We have clear indication here that he was not complying. But here's my answer. It depends on whose story you've got. Ms. Weatherspoon had a different story. I mean, they run out of the car very quickly, and when he doesn't raise his hands immediately, they grab him. Well, that was her testimony. But on this, we have a very clear finding of fact by the district court. This is what the district court. You know, that's the whole problem here. We don't have a whole lot of findings. We don't. We don't. But what we do have at page 205 of the appendix, the district court said that's the reason your argument failed significantly. Because once the orders are given, your client resisted complying with a reasonable request by law enforcement that did not intrude into his constitutional rights. But that depends on which witnesses the district court found credible. And we don't have any – he doesn't explain which witnesses he finds credible. He doesn't. He sort of guessed.  We know that district judges ruling extemporaneously as here do not and are not required to state chapter and verse. This is a very clear finding. It's very clear that he found the officers credible. Every officer credible. Which ones? Because the officers testified at cross purposes on several issues. Well, let me say, and I still am going to come back to the important analysis of reasonable suspicion. But on removing his hands, McGinnis is the one who's confronting him directly and says, I told him repeatedly. And as he didn't do it and as I became concerned, he pulled his gun. The officer who somehow has not been mentioned this morning is Officer Pazeka. I think his name is pronounced. Also omitted from the defendant's reply brief. Pazeka is right behind the other two officers. He says, essentially, this man never complied with us. He was backing up. He was being told repeatedly to pull his hands out. He didn't. He briefly put his hands up on the wall. And then he took them down and this whole fracas ensued as he continued to resist. Campbell is the one they rely on. Campbell is not. But the two at the scene were Campbell and McGinnis, right? That's right. Well, they were the first two. Pazeka was right behind them. He parked right behind their cruiser. He was just a few feet behind them as they walked up. Well, what he said initially was he observed the other officers engaging the suspect upon arrival. Well, he did. And he said, and I think it's page 140 where he says he never complied. And he speaks quite a bit about him not taking his hands out. Campbell is never pressed by either side on the exact details of when he raised his hands. The quotes that Mr. Epstein is relying on, several times in cross-examination, Campbell is asked. And so he raised his hands and he says, yes. What seems to have happened here is that there does seem to be a consensus that he essentially stopped and maybe took a couple steps back, but he didn't try to run. And then they come up and they say, put up your hands, and perhaps he was slow doing that. That sounds a bit like the Brown case that we had from 2006 where the person put his arm. In fact, that Brown put his hands on the hood of the car and then started running later on. That would sound like Brown, but those are not the facts here. The facts here is that as they were walking towards him on the street, they were immediately telling him to withdraw his hands. There's nothing in the record that contradicts that. What is this case like, the Johnson case from the Sixth Circuit in 2010? The Johnson case, Your Honor, if I recall correctly, is where the person, he actually yielded. He stopped. He put his hands on the car. He looked at the officers. Well, initially he ignored the police, the orders to stop and stay. Then upon reaching a waiting car, he stood at the passenger side door and turned toward the officers. And the court said he had stopped enough. He had basically submitted to their authority. And the fact that he later didn't put his arms up and whatnot doesn't mean that he wasn't seized at the moment that he stopped by the side of the car. That's right. He was seized. He did stop. He did yield. He had his hands on the car. And then later they say to him, could you raise your hands? And he doesn't. And what the Sixth Circuit says is you can't consider that because he's already been seized. That is not this case. And so this person here wasn't already seized? He was not, Your Honor, because the best you could show on the defense side, the best you could say, is that he was told simultaneously to stop and withdraw his hands. If you're with your girlfriend at 4 o'clock in the morning and three police cars come up and they jump out of the car and they tell you to stop and you do, I mean, you'd be frightened out of your mind, wouldn't you? I probably would, Your Honor. But, Your Honor, that's not the record here. There is a discrepancy as to whether he stops. We acknowledge that, as we have throughout. McGinnis says he was frozen. The other two say he wasn't. The other two say, Campbell says he was back, sort of backing up. Pizzacca very clearly says. McGinnis says he was frozen and Witherbroon says he was frozen. That's right. And now here, if this court finds it significant as to whether he truly stopped, then there does need to be a remand. I don't see a scenario in which this court should outright reverse and say he was stopped, where you have no factual finding that he was stopped and you do have this discrepancy. Why did they have to approach him in the first place and tell him to put his hands up? I mean, he's just there with his girlfriend on the street. Well, I myself think it was a reasonable thing for the officers to do. They have a report of a man with a gun. It's a high-crime area. It's 4 in the morning and shots were fired at a house. I was thinking the shooting was somebody was shot, but in fact there were just shots. The shots were fired at a house within an hour and a half before in the same neighborhood, which is notorious. It is reasonable for an officer to walk out. But the important point, and this is where I started and what I need to get out, is that let's say they're wrong. Let's say they should not have said to him, remove your hands. And he does not remove his hands. Because the seizure either has not happened or is happening at that moment, they can consider as part of the totality of the circumstances of reasonable suspicion what his reaction is. There's no rule, as Mr. Epstein said, that they can't even ask him this. The police can walk up and ask anything. They can ask him probing questions. They can ask him to stop. They can ask him to stand there. But everything you're just saying strikes Mr. Zalzberg as weighing in favor of a remand because we have a different fact pattern than J.L. We have a different fact pattern than other similar cases that we've written on in this area. And, you know, the government strikes me as asking for a little bit of an extension or a modification of J.L. based upon, you know, what perhaps are better facts for the government than the facts that the government had in J.L. Why would we ever write an opinion of that magnitude and that difficulty without detailed fact-finding by the district court? That strikes me as almost very aggressive, if not reckless, by the appellate court, in my own opinion. Why am I wrong about that? I'm not quarreling with Your Honor. If the court feels that it needs a specific timeline of what happened, then there has to be a remand. I'm explaining why, just based on the refusal to show his hands, which I do think is immediate and supported by the testimony of all of the officers. And Judge Joyner found it sufficient. He found it, he didn't find it necessary to go into what happened as he backed up, put his hands against the wall. He found it sufficient that right at the outset they asked him to show his hands and he didn't. I think that's sufficient also. But Your Honor's right. If Your Honor does not... I'm not aware of a lot of case law out there about this whole dispute about show me your hands. And I think you agreed with me that if we walk out there now on Market Street, the police cannot require us to show them our hands. So I assume the distinction you're making is, well, Market Street at lunchtime is not high crime neighborhood, 4 in the morning, report of a man with a gun in an area where shots were fired an hour and a half earlier. That's exactly right. And that's, by the way, what explains the Burton case in the Fourth Circuit. All they had in Burton was an officer walked up to a man for no reason whatsoever and said, show me your hands and he didn't. But there were the officers repeatedly asking him to take his hands out of his pockets and he didn't do it. That's right. But that's all there was in Burton. Whereas here you have all the other factors that we've talked about. In terms of case law, Your Honor, you're right, there's not a great deal of case law. But let me talk about two cases that are important. One's not that important because it's not precedential. But the Samuels case in this circuit is very closely similar. They come up, the officers come up on a man. He's backing up from them on the porch of a home. They tell him to stop and show his hands. And I think he shows one hand. And this court says they've got reasonable suspicion at this moment of criminal activity to pat him down. The other case that's more important is the Supreme Court's case in Illinois v. Wardlow. And this is also what defeats Mr. Epstein's argument this morning, that you don't even have the right to ask somebody to do something that he has the right to refuse to do. Wardlow is a case in which all the officers do is pull up and the man runs. Now that's something that if somebody has the right to do. But nobody ran here. No, that's right. But let me just explain what I think is the legal analogy, Your Honor. If I'm standing on Market Street with Judge Hardiman and the police pull up and I run, that's not reasonable suspicion. I have the right to run away from anything I want to run away from. And yet the Supreme Court says even if you have the right to do that, an officer can still consider that in the totality of the circumstances. And what is the plus factor in Wardlow that leads to the finding of reasonable suspicion and this court has affirmed it in subsequent decisions is it's a high crime area. So flight in a high crime area, in other words, you can always take innocent things that happen and put them together. That's the Arvizu decision. Yeah, but the defendant's position is he was seized when the four police officers initially came there and before he was even frisked. So that, sure, the frisk, they've got a gun. But his position is that the officers seized him immediately upon being there and asking him to do something which he didn't have to do. There was a show of authority and so he was seized before they even found the gun or had a right to look for the gun. What's wrong with that type of thing? Well, that's incorrect for two reasons. One is officers simply walking up to somebody. Four officers walking. They didn't walk up. They ran up, basically. Four officers coming up on someone in any fashion is not a seizure. That's black letter law. That's not a show of authority? It's a show of authority. But what a seizure is, according to Hodari, is a show of authority plus submission. That's the key. Yeah, this guy froze. But, again, as I said, at best he's being told simultaneously, freeze and show your hands. Freeze, we don't know. There is discrepancy on that. Well, before he was told to show his hands, before he was approached in a rather abrupt manner, at that point could a reasonable, objectively thinking man conclude that he was free to go? No. Okay, so why wasn't he seized then? Before they even told him to show his hands and he refused to do it. We are not disputing that there was a show of authority, and I hope I'm clear on that. And seized, not a show of authority. But there is not. Would he objectively have the right to say at that point with the four officers around him, he's not free to walk away? I agree with that. That's why it's a show of authority. No, because he needs to submit. And he does not submit in taking out his hands, which is the first thing he's told. The officers not only testify, but they're telling him immediately as they're walking towards him, show your hands. If we follow what Johnson did, if we get to that. Excuse me? If we follow what Johnson did in the Sixth Circuit, this is pretty much an all fours, that even if you start backing up later on, once you say, you stop, and you sort of stand in place for even a moment, you've submitted to authority. What's crucial here, and it's unfortunate that these cases come down to these fine facts like this, what's crucial here is when the order is given to show his hands. Here, it's as they're walking towards him, immediately. Basically what your argument is, is that maybe he was froze, but there's two things he had to do to submit to authority. He had to stop, and he had to show his hands. He may have stopped, there's a factual question you claim about that, but since he didn't show his hands immediately, therefore he didn't submit to authority. I think what I'm saying to be precise, Your Honor, is that what's the relevance of a seizure? Why is a seizure important? It's important because that's the moment at which this court has to assess reasonable suspicion. We need to pinpoint that moment. Whatever is happening at that moment, the officers and this court can consider in deciding whether there's reasonable suspicion. If it happens after that moment, you can't. And what I'm saying is, at that moment of seizure, he is doing two things. At best, I won't agree that he's frozen in place, because there is discrepancy, but at best for the defense, he's doing two things at that second. He is in place, and he's not showing his hands. That means at that moment, that's where we freeze the picture and say, let's look at the totality of the circumstances. And at that second, the totality of the circumstances includes that he has refused to show his hands. But you know what? Mr. Epstein points out, the first question I ask him, what should they have done? Instead of jumping out of the car and really, in a very aggressive way, showing their authority, what if they had done, said, excuse me, I need to talk to you. Another person is standing by the way, just in case something goes wrong. There's been a shooting an hour and a half ago. There's been a tip given to us of a person that meets your description somewhat, and we'd like to ask you some questions. Why not do that? Well, they could. And I'm not going to be the one to tell police officers on the street at 4 in the morning in this area where shots are being fired exactly how to do their jobs. They chose to tell him to show his hands. And I think it's pure common sense. Not only do we accept what the officers say, and Judge Joyner clearly did, that he gave this order, but it's common sense that you're walking up on somebody with his hands stuffed into his jacket at 4 in the morning where shots are fired. You have an anonymous report, except it's anonymous, but exactly describing this person. I think an officer would actually be fairly crazy. Nothing ever came into any type of evidence that this was the person who did the shooting the hour and a half previous? No, absolutely not. So, Your Honor, what I'm saying is that I think what they did is reasonable, and that's what the Fourth Amendment is all about. But even if it's not reasonable, the reason this prevails is because of the way the Supreme Court, for better or worse, has defined this whole area of law through HODARI. What HODARI basically stands for, HODARI of course is the case where they're chasing the guy down the alley, and the Supreme Court says we will assume that they did not have a basis to do that. And it's obviously what compels the person to toss the narcotics. And they say there's been no seizure because he hasn't submitted. So the way the Supreme Court has framed the inquiry, for better or worse, is it's not just the show of authority. It's not just you and I discussing should the police have done it better, could they have done this better. It's what actually happened, what happened up to that moment of seizure. And what I'm saying is up to that moment of seizure, Judge Joyner made a factual finding. He did not show his hands. That's the moment we freeze the picture, and that's the moment we say what do we have. And that's what I'm saying to you is that is a stretch beyond standing. Submitting to authority could be just standing in place. And if it was determined that he stopped and he essentially stood in place, even if he took a step or two backwards, he basically didn't try to run. And to go any further means you've now hit a seizure. So whether he didn't raise his hands quickly enough, that's an after-the-fact matter. No, not if he didn't raise his hands quickly enough, to use your Honor's words, before that seizure. And they testified that this was... That's the key word, before the seizure. But if the seizure occurred before they told him to raise his, or before he actually raised his hands. In other words, when does a seizure happen? This is when you were standing on the street, the police come up and they go to you and Judge Hardiman, okay, stop, raise your hands. If you stop and you don't raise your hands, you're telling me that's not a seizure. No, what I'm saying is in this case, I'm looking at the facts of this case, they're telling him not to raise his hands as they're walking towards him. This doesn't happen where they casually stroll up to him and say, oh, by the way, could you show your hands. This is happening over the course of walking several car lengths towards him because... Very quickly. Whether it's quick or not, they're concerned for their safety. They say they had to tell him multiple times, as Pozeka says. They're walking towards him, he's walking back, and they're telling him multiple times. There has not been a seizure. At best, as I've said, there's a simultaneous stop, but by that point, he has not shown his hands. That's the district court's finding. We can send it back, and I'm fairly confident that Judge Scheuner can more clearly articulate the finding that he made, but it's evident in the ruling that he reached, that he was asked to do this. If I could just say one other thing, just to preserve it. We don't agree, as it's just a secondary issue that doesn't have to be reached, that this really was a stop. Even if he did freeze, as it was said, and then he was backing up. You mean a stop or a seizure? A seizure, because what this is is momentary compliance. This is different from Brown. Brown, these gentlemen are coming out of the store, and they actually stop, and then they're told, go get, put your hands on the car so we can frisk you. But again, I keep coming back to Johnson from the Sixth Circuit. It seems like this case is remarkably close. Well, but it's not, because here the person backs up, and then he just basically bolts. And Johnson, by the way, the person never resists. The only issue there is in assessing reasonable suspicion. He never raises, he wouldn't raise his hands. He wouldn't raise his hands. But what this case is really like is Valentine, which Judge Cowen wrote, with the proposition repeatedly stated in this court that momentary compliance is not a seizure. This guy is weighing his options as he backs up with his hands. How do you distinguish Johnson v. Campbell, the case where the basketball coach is in the car, and he's got his window down, and he won't roll his car window down, and we said that's a seizure? That's right, but the same thing. He never left. We didn't have the issue there of momentary compliance. Valentine is the case that's really on point. And Smith, of course, two steps toward a car. Well, Smith, the guy took off. Well, he did. And here, this guy, as soon as he put his arms up, he put them down. He was reaching for the gun. He struggled with him. They had this huge fight. He was injured. This is not Johnson v. Campbell. Johnson v. Campbell, this court says when he's told the second time to roll down the window, and he complies, there's a seizure. Again, it's always that second part that sometimes is present and sometimes not that you have to submit. So, no, my primary argument here, of course, is he didn't remove his hands up to the time of the seizure, and Judge Joyner did it exactly right in considering the totality as of that moment and finding that there was reasonable suspicion. Not probable cause, a reasonable, articulable suspicion that this guy was up to no good because he wasn't showing his hands. I'm only saying as a secondary point. If his hands are not in his pocket, they have no right to do a Terry stop, correct? That's probably true. If he stands still and doesn't go anywhere, that's not true. So the whole case comes down to the command to show your hands, the alleged refusal to show the hands, and the timeline would seem to be critical regarding when the gun was drawn, when the command was made to show the hands, what response was made. These are all critical facts, are they not? I agree. And this is one of many cases in which it turns on facts like this as to whether the police could do what they ultimately did. Here, again, I rest on Judge Joyner's finding that, and I think it's implicit in his finding, that he didn't show his hands as he was repeatedly told to do so up until the time they finally got control of him. If Your Honor thinks you need to know more about the timeline, then I completely respect Your Honor's suggestion. Let me just straighten that. So your basic position is he was never seized until after they discovered the gun. Up to that point, they were doing a Terry stop, and for their safety purposes, they were telling him to take his hands off. Right. Now, that's my backup position, that he wasn't seized until he was finally subdued. But your initial position is not the Terry stop, and he was always seized after they found the gun. Your basic position is they had a right to stop him in the first place. That's right. My initial position is if you assess reasonable suspicion as of the time of the seizure, by that time he has been told repeatedly to remove his hands, he hasn't done it. You add to that, middle of the night, high crime area, description, recent shooting, that's reasonable suspicion. It is not Florida v. J.I. Reasonable suspicion for a Terry stop. For a Terry stop, which would allow the frisk, which they finally got. Allow the frisk for safety purposes, and then when they finally got it, he's seized. Exactly, Your Honor. All right. Thank you very much, Mr. Strasburg. Thank you. Mr. Epstein. Thank you, Your Honor. My friend here has it wrong in suggesting that he was not seized until the alleged delay in raising his hands.  No, no. They don't claim he was seized when he didn't raise his hands. They're saying that when he didn't raise his hands, that at that point they had a right to frisk him for safety purposes, and that they had the right to frisk him because he didn't raise his hands. Your Honor, if I understand the government, there's no dispute there was a show of authority as soon as they got out of the car. There's really no dispute in the testimony that Mr. Lowe stays put. McGinnis testifies that he's frozen. Campbell says he's sort of kind of backed up a step into the fence. He stays put. He is seized immediately. This Court's decision in John G. He can't be seized if he didn't submit and he didn't raise his hands. He submits, Your Honor, by staying put, and we don't even get to the conflict over whether he raised, how quickly he raised his hands because he stays put. And there's case law that's clear on this. He's submitting if he stays put, but he doesn't take his hands out of his pocket. Yes, yes, and that's clear from the United States version of Johnson. That's all dependent, it seems to me, on whether the government, I'm sorry to sound like a broken record, but it seems to be the seminal question in the case is did the government have the right to order him to show his hands? Oh, without reasonable suspicion, it's clear that they don't. And that's made clear in the Fourth Circuit case. What cases do we have where courts have said that on these facts, high crime neighborhood, middle of the night, shots fired, et cetera, et cetera, all the totality of the circumstances that the government can't ask, can't require someone to show their hands? Require. Right, yeah, it's not a, it's a. Not that they can't refuse. Not that they can't say, would you please take your hands out? It's requiring a gun point. So, United States versus Burden, the Fourth Circuit case, I would submit is on point. Now, Mr. Zalsmer would say, well, that's different because it's not a high crime area, there's not an anonymous tip. I would submit it's totally on point, and here's why. There's no reasonable suspicion in Burden when they make the demand, and there's no reasonable suspicion here where they make the demand. They might be a little closer to reasonable suspicion here because of the anonymous tip, but they still have no dispute. They haven't passed the threshold of reasonable suspicion, and why that matters is because the Supreme Court in Wardlow says, when an officer without reasonable suspicion approaches an individual, the individual has a right to ignore the police and go about his business, and any refusal to cooperate without more does not furnish the minimal level of objective justification. So, if the officer. But the government's conceded if he's standing there with his hands by his side, there's no reasonable suspicion, but they say that it's different because his hands are hidden. I mean, isn't it possible he could have had a gun in his pocket and pulled it out and shot them? I mean, that seems sort of obvious, isn't it? They don't have reasonable suspicion of that, though, and because of that, they can't demand it. Because of that, he can't. Why wouldn't they when they've been told that someone fitting his description has a gun? You've got all of these factors. Because that's. You have all of these factors that even the Supreme Court, not just the courts of appeals, have indicated are plus factors very much in favor of the government. There's no dispute from the government that the officer did not have reasonable suspicion when they made their show of authority, when they issued their demand that he raise his hand. There's no dispute about that. No, they're saying they got the reasonable suspicion for the Terry stop by asking him to show his hands. They say the reasonable suspicion came only as a result of him not immediately raising his hand. When they made the demand for him to raise his hands, there's no dispute. They didn't have reasonable suspicion at that point. That's not even a dispute. But with no case law. I mean, there's. But there's. Why? Why? There is. We're not dealing with a binary question of, you know, where reasonable minds can't disagree. We're not dealing with a well-worn path like some of the other fact patterns that you gentlemen are even more familiar with than we are. We're dealing with a fairly novel, very difficult situation. Why not remand the case? That's certainly an option here. Why I would suggest you don't need to is if you take any of the officer's versions, as a matter of law, there's not a right. Police do not have reasonable suspicion to justify the seizure. If you want cases on it, United States versus Burden, Fourth Circuit case, officer approach without reasonable suspicion, hands are in pockets. Fourth Circuit says the police have no right to ask, to demand that he remove his hands and that the fact that the defendant there refused to remove his hand didn't provide the reasonable suspicion. Let me just follow up with Judge Hardiman. You may be right. And maybe we take on the Burton case or the Sixth Circuit and from Fourth Circuit or the Sixth Circuit's case in Johnson. But before we do that, shouldn't we just try to get the facts, which we don't have? Well, we have each of the officer's. We have allegations. We have each of the officer's testimony. My feeling is that under any of their versions, take Paseka, take McGinnis, take Campbell, under none of them do the officers have reasonable suspicion to seize Mr. Lowe. Not to seize him, but do they have reasonable, the backup argument is the government. Don't they have reasonable suspicion to do a Terry stop? To do a Terry stop. And when they did the Terry stop, they stopped him, Terry stop, and told him to take his hands out of his pocket. Aren't they in a position to then say, we're going to defrisk him? And at that point, they finally go and they arrest him. Why isn't the backup position bulletproof, so to speak? Because if you acknowledge that they had a right to be there, to say something to him, and you acknowledge that there's evidence that he was told to take his hands, show his hands, at that point, don't they have the ability, the right to frisk him for their safety? No, Your Honor. They have a right, as in any case, an officer has a right to go up to someone and try to arrest them. That the officers have a right to do, but there's no dispute that's not what occurred here. What occurred was the officers getting out of their patrol cars and immediately making a show of authority without reasonable suspicion. Well, a show of authority is not a Terry stop as such. As soon as Mr. Lowe responds to that show of authority, by not running away, it's a Terry stop. You mean a seizure? It's a seizure, Fred. Or a Terry stop, because you're saying that if he hasn't disobeyed the order, then they don't have enough for a Terry stop. And the case is made clear that the seizure is, at that very moment, as soon as he doesn't run away in response to the show of authority. The case, we cite United States v. Roberson in our brief on the reasonable suspicion issue on an anonymous tip. It's also directly relevant on how quick the seizure occurs in a case like this. In Roberson, Judge Becker again, writing for the court, the officer responding to the anonymous tip of a man on a hotspot selling drugs, gets out of his car, makes a show of authority, and right then, Mr. Roberson was seized. And we know it was right then from the opinion, because the very next thing that happens is the officers, as they approach, they see the gun in Mr. Roberson's waistband. And it doesn't count towards reasonable suspicion, because he was seized as soon as the officers got out of the car and made the show of authority, and Roberson didn't run away. Counsel, if this was a Terry stop, he wasn't seized when they engaged him and said, okay, show us your hands if it's a Terry stop. Yes, Your Honor, he was, because they made a show of authority, and he didn't try to run away. He submitted by staying put. Well, you're saying that any Terry stop is a Fourth Amendment, a Terry stop is not a complete Fourth Amendment stop. It's a Terry stop. It's a violation of the Fourth Amendment if the police don't have reasonable suspicion to support it. Given the totality of the circumstances, didn't they have authority for a Terry stop? No, Your Honor, they didn't. Well, that's interesting, because with all these factors, you're saying a police officer could not approach someone who matched the description, high crime area, 4 in the morning, gunshot reports in the area, that they don't have authority to stop someone for a Terry stop. No, Your Honor. The anonymous tip, it's clear from Florida v. J.L. Forget about the anonymous tip. High crime area, this Court covered that in Roberson. If you don't see suspicious activity matching the type of crime in that high crime area, that doesn't add anything. The gunshot from an hour and a half earlier, even Judge Joyner said that's a quantum leap. It was undisputed, and if you look at page 202, 203 of the appendix, and also page 58, defense counsel made representations to the Court that were not disputed by the government. That earlier gunshot, the complainant said it was probably a woman who fired the shot, because there was a dispute between a group of women outside her front lawn, and the shot came through a minute later. No dispute. There was no suggestion from the tipster. The problem that I see with the government's fallback argument on Terry stop is that in Terry, there was a police officer observing an individual, physically observing him, casing what he thought was casing a department store, as I recall. Correct. And he then had a right, because he thought that there could be criminal activity afoot, to go up and investigate further. This is beyond that. That's exactly right, Your Honor. When they pull up in the car, they don't see anything suspicious. They just see a young couple engaged in quiet conversation. All that's suspicious is the information in their head before they approach. Yes. So unless they can gain more, like flight plots and all this other stuff, unless they can gain more, you win the case. Exactly. But the judge saw it the other way. Obviously, the judge saw it the other way, and you can't be exactly sure what facts you relied on. Well, if you look at any of the officer's testimony, at the moment they get out of the car and make that show of authority, they don't have reasonable suspicion. And since he didn't run away, under all of their accounts, he doesn't run away, he's submitted.  But wouldn't you concede it's a novel type of case in this regard? The hidden hand, let's call it the hidden hands case, because it would be a little bit risky for courts to establish a principle of law that officers need to engage in citizen encounters at their peril, allowing people who they think may be not reasonable suspicion, but something less, might be of interest. They have to approach them at their peril and run the risk of getting shot. The alternative, besides going up and trying to engage them in a consensual encounter, they could have continued to surveil from their cars, and by doing that they might well have seen something suspicious. Like in all the other cases, the government side, where they see some kind of furtive hand movement, that the officers from their experience think he's trying to hide a gun or trying to reach for the gun or something. They could have surveilled, they could have continued to surveil, they could have tried to engage in a consensual encounter, and then maybe seen something suspicious happen. And that's all possible, but that's also countermanded by the notion that when you hear about people having guns in this society, it might be better to act quickly rather than to just sit back and watch. Right, but the Fourth Circuit in Vernon, the Second Circuit in Simmons, the Sixth Circuit in Johnson, all dealt with this. Although I don't think Simmons helps you that much. Well, Simmons actually does, Your Honor, because the Second Circuit there said once the defendant stopped for reasonable suspicion purposes for the stop, once he comes to a halt, the officers couldn't consider for reasonable suspicion purposes, the court wouldn't consider for reasonable suspicion purposes, what happens next, that they ask him to raise his hands, and he doesn't comply. He keeps his hands down, or actually in his pockets. And the court said, well wait, he was already seized, he stopped. You can't consider that for purposes of reasonable suspicion for the stop. Thank you. Thank you both counsel. Very well presented arguments as always. Thank you. Take the matter under advice.